NATHAN CUSHING & others *vs.* ASA A. BREED & another.

Grain on storage may be sold in parcels, without any separation of the quantity sold from the rest of the mass, if, by request of the vendor and purchaser, the storekeeper agrees thenceforward to hold that quantity for the purchaser; and a valid title will pass by such sale, and the vendor and purchaser will become tenants in common of the whole grain, in proportion to their respective interests therein.

CONTRACT to recover the price of five hundred bushels of oats sold and delivered. The answer admitted the sale and delivery of one hundred and five bushels, and offered judgment for the price thereof; and denied the residue.

At the trial in the superior court, before *Russell,* J., without a jury, the following facts appeared : The plaintiffs were owners of a cargo of black oats, received by the schooner Seven Broth-ers, which on being weighed was found to contain 6695 bushels, and was elevated and stored in the Merchants' Grain Elevator, a grain warehouse in Boston, not belonging to either the plaintiffs or defendants, but to persons whose business it was to receive, elevate, store, weigh and deliver grain. The cargo was put into two bins, and the plaintiffs thereafter agreed to sell to the defendants five hundred bushels thereof, at ninety-one cents a bushel, and accordingly delivered to them an order upon the proprietors of the elevator, dated June 23, 1864, the body of which was as follows : " Please deliver Breed & Co. or order five hundred bushels black oats from cargo per schooner Seven Brothers, storage commencing, to the person or persons in whose favor this order is drawn, June 29, 1864." This order was presented on June 25th 1864 to the proprietors of the elevator, who accepted the same in the usual manner by retaining the order and entering it in their books, and on the same day delivered to the defendants one hundred and five bushels of the oats. Before July 5th 1864, the whole cargo had been sold and delivered and removed from the elevator except 1274 bushels ; and this amount which remained in the elevator included 305 bushels of the quantity agreed to be sold to the defendants. On the 5th of July a fire occurred, without the fault of either of the parties

to this action, and rendered the oats which remained in the elevator nearly worthless. The price for weighing and elevating these oats was charged to the plaintiffs.

It was the general usage of dealers in grain in Boston to place cargoes and other large quantities of grain in elevators, where the same remained until sold, either in entire lots or in smaller quantities, by orders given by the vendor to the purchaser, and after such sale it was removed from the elevator or kept therein at the election of the purchaser. After the acceptance of such order by the proprietors of the elevator, the grain covered thereby was treated by them in all respects as the property of the purchaser; the vendor had no further control over it, and did no act in reference to separating it from the rest, or removing it from the elevator; but the proprietors held the same subject to the order of the purchaser, obeyed his directions in all respects in reference thereto, received orders from him in the same manner as from the original vendor, or weighed it out to him in such quantities and at such times as he required, they guaranteeing to deliver out the full number of bushels weighed into the elevator. They made no charge to the purchaser except for storage. Different cargoes of the same quality, belonging to different owners, were sometimes mingled in the bins. Parcels of grain, bought as above, were paid for according to contract, and without regard to whether or not they had been separated and removed from the elevator, and all damage to grain so sold, from internal causes occurring after the delivery of the order, was borne by the purchaser. All the above usages were known to the defendants; but they objected to the evidence to prove the same.

Upon these facts, the judge ruled that there was no such change of title to the grain, except as to the one hundred and five bushels actually removed by the defendants from the elevator, as to make the defendants liable to this action; and found that the plaintiffs were only entitled to recover the price agreed for the one hundred and five bushels, with interest. The plaintiffs alleged exceptions.

*W. Gaston & W. A. Field,* for the plaintiffs. This is the case

of a sale of an undivided part of a cargo in the possession of third persons who had control of it, and whom the purchasers made their agents for storing and delivering the quantity bought, as they might direct. The purchasers could have had a separation when they desired it, and the portion sold was left unseparated solely in accordance with their wishes. Regarded as a sale of an undivided part, the transaction was complete. The case of *Weld* v. *Cutler*, 2 Gray, 196, establishes that separation is not always necessary to complete a sale. Possession of the whole by the purchaser, with the right to separate his portion, is all that is necessary. In the present case, the warehousemen had possession of the whole; and their possession was coupled with an interest, for they had accepted delivery orders for parcels of the cargo. The plaintiffs had lost all control over the quantity covered by the orders which they had drawn. The warehousemen charged storage to the defendants; and after the date when by the terms of the order they began to charge storage to the defendants, certainly they were the agents of the defendants, in possession, and with the right of possession over the whole, so far as was necessary to enable them to deliver what was covered by the orders which they had accepted.

It is no test of a completed sale, as between vendor and purchaser, that the vendor's creditors may attach the property, or that a right of stoppage *in transitu* may exist. Nor is it a test, that the purchaser could not maintain replevin. Of course replevin would not lie without an actual separation. *Scudder* v *Worster*, 11 Cush. 573. *Ropes* v. *Lane*, 9 Allen, 502. And in those cases no such usages of trade appeared as in the present case. The English cases also are distinguishable from this. In most of them no usage of trade was proved, and the goods remained in the actual possession of the vendors, or something remained to be done by them. In Maine and New York, the decisions go further than is necessary for this case. *Waldron* v. *Chase*, 37 Maine, 414. *Kimberly* v. *Patchin*, 19 N. Y. 330. The customs and usages of trade here proved were reasonable. *Clark* v. *Baker*, 11 Met. 186.

*C. B. Goodrich & I. J. Austin,* for the defendants. Weighing

and separation of the quantity of oats sold were acts which the vendors were bound to perform.   They had a right to select from either of the two bins.   Any five hundred bushels, which constituted a part of the cargo of the Seven Brothers, wherever stored, would have answered the contract.   *Riddle* v. *Varnum*, 20 Pick. 283.   *Scudder* v. *Worster*, 11 Cush. 573.   *Weld* v. *Cutler*, 2 Gray, 196.   *Claflin* v. *Boston & Lowell Railroad*, 7 Allen, 344.   *Ropes* v. *Lane*, 9 Allen, 502; *S. C.* 11 Allen, 591.   *Hanson* v. *Meyer*, 6 East, 614.   *White* v. *Wilks*, 5 Taunt. 176.   *Shepley* v. *Davis*, Ib. 617.   *Busk* v. *Davis*, 2 M. & S. 397.   *Aldridge* v. *Johnson*, 7 El. & Bl. 885.   The order of the plaintiffs did not pass the title to any specific five hundred bushels of oats.   It implied a request to the warehousemen to separate, weigh and deliver that quantity.   These acts were to be performed by the agents of the vendors.   But the defendants had no right to enter the warehouse, and separate their property.

The evidence of usage was inadmissible.   The effect and object of it were to control and change the terms of the contract between the parties, by showing the opinion of certain warehousemen and persons who deposit grain for storage, as to the legal effect of a contract to sell, and of a written order by vendors upon their agents.   Although the vendors after the delivery of such orders might not interfere personally, yet their agents would separate, weigh and deliver the grain at their cost, and the vendors are responsible for the acts of their agents in doing so, and might countermand the order and the separation, weighing and delivery.   The supposed usage is inconsistent with the contract made by the parties, and with the legal rights and duties resulting therefrom.   It is unreasonable, because under it the property of different owners may be mingled, and a purchaser from one person may be compelled to receive property owned by another.   So if, by reason of mistakes in weighing or of shrinking, the quantity is insufficient to answer all the orders, the purchaser may be compelled to receive the personal responsibility of the warehouseman.   The supposed usage is inconsistent with the policy of the law regulating public warehouses, and is calculated to create confusion and uncertainty in mercantile

contracts.   *St.* 1860, *c.* 206.   *Dickinson* v. *Gay*, 7 Allen, 29
*Dodd* v. *Farlow*, 11 Allen, 426.

CHAPMAN, J.   The use of elevators for the storage of grain
has introduced some new methods of dealing, but the rights of
parties who adopt these methods must be determined by the
principles of the common law.   The proprietors of the elevator
are the agents of the various parties for whom they act.   When
several parties have stored various parcels of grain in the ele-
vator, and it is put into one mass, according to a usage to which
they must be deemed to have assented, they are tenants in com-
mon of the grain.   Each is entitled to such a proportion as the
quantity placed there by him bears to the whole mass.   When
one of them sells a certain number of bushels, it is a sale of
property owned by him in common.   It is not necessary to take
it away in order to complete the purchase.   If the vendor gives
an order on the agents to deliver it to the vendee, and the agents
accept the order, and agree with the vendee to store the prop-
erty for him, and give him a receipt therefor, the delivery is
thereby complete, and the property belongs to the vendee.   The
vendor has nothing more to do to complete the sale, nor has he ·
any further dominion over the property.   The agent holds it as
the property of the vendee, owned by him in common with the
other grain in the elevator.   It is elementary law that a tenant
in common of personal property in the hands of an agent may
sell the whole or any part of his interest in the property, by the
method above stated, or by any other method equivalent to it.
Actual separation and taking away are not necessary to complete
the sale.   As to the property sold, the agent acts for a new prin-
cipal, and holds his property for him.   The law is the same,
whether the proprietors are numerous or the vendor and vendee
are owners of the whole.   If the vendee resells the whole or a
part of what he has purchased, his vendee may, by the same
course of dealing, become also a tenant in common as to the
part which he has bought.

This is not like the class of sales where the vendor retains the
possession, because there is something further for him to do
such as measuring, or weighing, or marking, as in *Scudder* v

*Worster*, 11 Cush. 573; nor like the case of *Weld* v. *Cutler*, 2 Gray, 195, where the whole of a pile of coal was delivered to the vendee in order that he might make the separation. But the property is in the hands of an agent; and the same person who was the agent of the vendor to keep, becomes the agent of the vendee to keep; and the possession of the agent becomes the possession of the principal. *Hatch* v. *Bayley*, 12 Cush. 27, and cases cited. The tenancy in common results from the method of storage which has been agreed upon, and supersedes the necessity of measuring, weighing or separating the part sold.

No delivery is necessary to a tenant in common. *Beaumont* v. *Crane*, 14 Mass. 400.

Upon these principles, the plaintiffs are entitled to recover the amount due them for the property thus sold and delivered to the defendants. The damage occasioned to this property by the fire must be borne by the defendants, as owners of the property.

*Exceptions sustained.* .